1
2
3
4
5
6
7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CARLTON V. MOSLEY,                          No.  2:16-cv-0486 JAM AC P

12                  Plaintiff,

13        v.                                      ORDER AND FINDINGS AND
                                                  RECOMMENDATIONS
14   JEFFREY BEARD, et al.,

15                  Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se in an action brought under 42 U.S.C. § 1983.

18   In addition to filing an amended complaint (ECF No. 13), plaintiff has filed an application to

19   proceed in forma pauperis pursuant to 28 U.S.C. § 1915 (ECF No. 2), a motion for appointment

20   of counsel (ECF No. 3), and a request for injunctive relief (ECF No. 4).

21        I.        Request to Proceed In Forma Pauperis (ECF No. 2)

22        Plaintiff has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.

23   ECF No. 2.  Plaintiff's application makes the showing required by 28 U.S.C. § 1915(a)(1) and

24   (2).  Accordingly, by separate order, the court directs the agency having custody of plaintiff to

25   collect and forward the appropriate monthly payments for the filing fee as set forth in 28 U.S.C.

26   § 1915(b)(1) and (2).

27        II.       Statutory Screening of Prisoner Complaints

28        The court is required to screen complaints brought by prisoners seeking relief against a

                                                 1

1   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

2   court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

3   "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

4   monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

5          A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

6   Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

7   Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

8   indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

9   490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

10  pleaded, has an arguable legal and factual basis.  See Franklin, 745 F.2d at 1227.

11         A complaint, or portion thereof, should only be dismissed for failure to state a claim upon

12  which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in

13  support of the claim or claims that would entitle him to relief.  Hishon v. King & Spalding, 467

14  U.S. 69, 73 (1984); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir.

15  1981).  In reviewing a complaint under this standard, the court must accept as true the allegations

16  of the complaint in question, Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740 (1976),

17  construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the

18  plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

19         A pro se plaintiff, like other litigants, must satisfy the pleading requirements of Rule 8(a)

20  of the Federal Rules of Civil Procedure.  Rule 8(a)(2) "requires a complaint to include a short and

21  plain statement of the claim showing that the pleader is entitled to relief, in order to give the

22  defendant fair notice of what the claim is and the grounds upon which it rests."  Bell Atl. Corp. v.

23  Twombly, 550 U.S. 544, 554, 562-63 (2007).  While the complaint must comply with the "short

24  and plaint statement" requirements of Rule 8, its allegations must also include the specificity

25  required by Twombly and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

26         To avoid dismissal for failure to state a claim a complaint must contain more than "naked

27  assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of

28  action."  Twombly, 550 U.S. at 555-57.  In other words, "[t]hreadbare recitals of the elements of a

1    cause of action, supported by mere conclusory statements do not suffice." <u>Iqbal</u>, 556 U.S. at 678.

2        III.        <u>Amended Complaint (ECF No. 13)</u>

3            In the amended complaint, plaintiff brings claims under the Eighth Amendment seeking

4    compensatory and punitive damages for allegedly inadequate mental health care received while

5    incarcerated at CSP-Sacramento (New Folsom).  ECF No. 13.  Plaintiff brings Eighth

6    Amendment claims against the following defendants in their official and individual capacities:

7    Jeffrey Beard, former Secretary of the California Department of Corrections and Rehabilitation

8    (CDCR); Jeff Macomber, the warden at New Folsom; and M. Blaikie, a clinical social worker at

9    New Folsom.  <u>Id.</u> at 2-4, 7-12.

10           According to the allegations of the amended complaint, which are accepted as true solely

11   for this analysis, plaintiff suffers from mental health issues and requires treatment for those

12   issues.  <u>See id</u>.  Plaintiff alleges that during an April 28, 2015 therapy session, Blaikie acted

13   unprofessionally and became agitated with plaintiff when he tried to explain the difficulties he

14   was experiencing with custody staff.  <u>Id.</u> at 4.  Plaintiff claims that he was either not receiving

15   medication or receiving a new medication for his mental health conditions, and, as a result,

16   displayed symptoms that affected his "response to custody command."  <u>Id.</u> at 4, 7.  Plaintiff

17   alleges that when he explained his problems to Blaikie, she stated, "the hell with you," and then

18   walked out of the room.  <u>Id.</u> at 4.  Plaintiff contends that five to ten minutes later, correctional

19   officers escorted him out of the treatment center, and Blaikie "pressed her alarm on plaintiff."  <u>Id.</u>

20   at 4, 9.

21           Except for the April 28, 2015 incident, the amended complaint contains only conclusory

22   and unspecific claims regarding defendants' deliberate indifference to plaintiff's mental health

23   care treatment.  <u>See id</u>. at 3-13.  Plaintiff alleges that defendants' Eighth Amendment violations

24   caused him "physical and mental injuries in the form of" damage to his right shoulder, hearing

25   voices, lack of sleep and eating, problems with balance, pain and suffering, humiliation, shame,

26   degradation, emotional distress, embarrassment, mental distress, "and other injuries."  <u>Id.</u> at 7-8,

27   11.

28   ////

3

IV.     Failure to State a Claim

At the outset, the amended complaint fails to state a claim against defendants in their official capacities.  Plaintiff may not recover monetary damages from defendants in their official capacity.  First, claims for monetary damages from the individual defendants in their official capacity are barred by state sovereign immunity under the Eleventh Amendment.  See Cardenas v. Anzal, 311 F.3d 929, 934-35 (9th Cir. 2002); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Second, state officials sued in their official capacity for monetary damages in any event are not "persons" subject to suit under 42 U.S.C. § 1983.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 & n.10 (1989).

Moreover, for the reasons discussed below, the amended complaint fails to state an Eighth Amendment claim against any of the named defendants in their individual capacities.

The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement.  Farmer v. Brennan, 511 U.S. 825, 833 (1994).  A prison official violates the Eighth Amendment only when two requirements are met.  Id.  First, the deprivation alleged must be objectively sufficiently serious: the act or omission must result in the denial of "the minimal civilized measure of life's necessities."  Id.  Second, the prison official must subjectively have a sufficiently culpable state of mind, one of deliberate indifference to inmate health or safety.  Id.  The official is not liable under the Eighth Amendment unless he knows of and disregards an excessive risk to the inmate's health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.  Id. at 837.  Then he must fail to take reasonable measures to abate the substantial risk of serious harm.  Id. at 847.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980).

To state a claim for relief under the Eighth Amendment for inadequate prison mental health or medical care, plaintiff must allege "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 106 (1976)).  This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that

4

'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). "A prisoner need not prove that he was completely denied medical care. Rather, he can establish deliberate indifference by showing that officials intentionally interfered with his medical treatment." Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (citations omitted) (en banc). A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. Toguchi, 391 F.3d at 1058; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). In addition, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).

A.      Count I - Defendants Beard and Macomber

Count I asserts an Eighth Amendment claim for "unsafe conditions" against defendants Beard and Macomber. ECF No. 13 at 3. Plaintiff alleges that Beard and Macomber violated his right to be free from cruel and unusual punishment; that they "knew or should have known that [their] conduct, attitudes and actions created an unreasonable risk of serious harm to plaintiff"; and that their actions and conduct demonstrate deliberate indifference to plaintiff's Eighth Amendment rights. Id. at 3, 6.

It appears that plaintiff's "unsafe conditions" claim is based on an allegation that he failed

1    to receive medication or mental health treatment and that such failure created an unsafe

2    environment that Beard and Macomber, as supervisors, should have remedied.  Plaintiff may not

3    recover from defendants Beard and Macomber in their individual capacities based solely upon

4    their supervisory responsibility.  There is no respondeat superior liability under § 1983.  Taylor,

5    880 F.2d at 1045.  "A defendant may be held liable as a supervisor under § 1983 if there exists

6    either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient

7    causal connection between the supervisor's wrongful conduct and the constitutional violation."

8    See Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (citation and internal quotation marks

9    omitted).  A supervisor may be liable for the constitutional violations of his subordinates if he

10   "knew of the violations and failed to act to prevent them."  Taylor, 880 F.2d at 1045.  Therefore,

11   when a named defendant holds a supervisorial position, the causal link between him and the

12   claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858,

13   862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S.

14   941 (1979).  Vague and conclusory allegations concerning the involvement of official personnel

15   in civil rights violations are not sufficient.  See Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th

16   Cir. 1982).  Finally, supervisory liability may also exist without any personal participation if the

17   official implemented "a policy so deficient that the policy itself is a repudiation of the

18   constitutional rights and is the moving force of the constitutional violation."  Redman v. Cnty. of

19   San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted),

20   abrogated on other grounds by Farmer, 511 U.S. 825.

21        Beyond conclusory allegations, plaintiff's amended complaint is devoid of any factual

22   allegations demonstrating that Beard and Macomber knew of their employees' alleged

23   constitutional violations or that plaintiff was in danger and failed to stop the violations or prevent

24   the danger.  Nor does the amended complaint contain any allegations establishing that Beard or

25   Macomber implemented a policy that caused plaintiff's claimed constitutional deprivation.

26        Moreover, plaintiff has failed to allege *any* particularized wrongdoing on Beard's or

27   Macomber's part, and in none of the allegations was Beard or Macomber shown to be either

28   involved or knowledgeable.  See May, 633 F.2d at 167.  As to defendant Beard, plaintiff alleges

6

1    only that Beard violated his Eighth Amendment rights by "acts of intimidation, abuse,

2    harassment, and other violations of law against plaintiff."  ECF No. 13 at 3.  Plaintiff does not,

3    however, identify specific acts by Beard to support his allegations.  As to defendant Macomber,

4    plaintiff alleges only that Macomber violated his Eighth Amendment rights by "his failure to

5    adequately supervise" defendant Blaikie.  Id. at 2-3.  Again, plaintiff does not identify specific

6    acts or conduct by Macomber to support this allegation.  Plaintiff has thus failed to allege *any*

7    facts demonstrating an affirmative link or connection between Beard or Macomber and any

8    claimed deprivation.

9         Accordingly, plaintiff has failed to state an Eighth Amendment claim against defendants

10   Beard and Macomber.

11        B.    Count II - Defendant Blaikie

12        In Count II, plaintiff appears to assert the following Eighth Amendment claims against

13   Blaikie: (1) cruel and unusual punishment based on excessive use of force; and (2) deliberate

14   indifference to plaintiff's mental health needs.  Id. at 4, 9-12.

15             1.    Excessive Use of Force

16        "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places

17   restraints on prison officials, who may not . . . use excessive physical force against prisoners."

18   Farmer, 511 U.S. at 832 (citing Hudson v. McMillian, 503 U.S. 1 (1992)).  "[W]henever prison

19   officials stand accused of using excessive physical force in violation of the [Eighth Amendment],

20   the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or

21   restore discipline, or maliciously and sadistically to cause harm."  Hudson, 503 U.S. at 6-7 (citing

22   Whitley v. Albers, 475 U.S. 312 (1986)).

23        Plaintiff's excessive force claim appears to be based on his allegation that Blaikie

24   "pressed her alarm on plaintiff" during the April 28, 2015 therapy session.  ECF No. 13 at 4, 9.

25   Plaintiff has not, however, explained how activating the alarm constituted excessive force or what

26   happened as a result of Blaikie activating the alarm.  For example, it is unclear from plaintiff's

27   allegations whether officers responded to the alarm, and if so, whether they took physical action.

28   Accordingly, plaintiff has failed to state a claim for excessive use of force against Blaikie.

7

1              2. Deliberate Indifference to Mental Health Needs

2          To the extent plaintiff's deliberate indifferent claim against Blaikie is based on allegations

3   that Blaikie acted unprofessionally or became agitated with him, plaintiff's claim fails.  See id. at

4   4, 9.  "[V]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under

5   42 U.S.C. § 1983."  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (quoting Collins

6   v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th

7   Cir. 1996) (stating that "verbal harrassment generally does not violate the Eighth Amendment"),

8   amended on other grounds by 135 F.3d 1318 (9th Cir. 1998); Gaut v. Sunn, 810 F.2d 923, 925

9   (9th Cir. 1987) (a "mere naked threat" from prison guards does not violate the Eighth

10  Amendment).  Beyond the April 28, 2015 incident, plaintiff alleges no other specific acts by

11  Blaikie demonstrating that she denied or delayed his mental health treatment or otherwise

12  violated his Eighth Amendment rights.  Thus, Blaikie's actions, without more, do not rise to the

13  level of an Eighth Amendment violation.  See Keenan, 83 F.3d at 1092 (harassment "calculated to

14  . . . cause [the prisoner] psychological damage" may state an Eighth Amendment claim) (citing

15  Oltarzewski, 830 F.2d at 139).

16         However, plaintiff also seems to allege that his new medication, or his failure to receive

17  medication, caused him to act oddly with custody staff.  In addition, plaintiff appears to claim that

18  Blaikie's refusal to listen to his problems with his medication led to his behavioral issues not

19  being resolved.  There is an implication that plaintiff's behavioral issues caused custody staff to

20  respond with force, and that Blaikie should have known this would happen because of plaintiff's

21  mental health status.  The court must reach to infer this theory, however.  The complaint makes

22  no express allegations that officers took any action against plaintiff based on his odd behavior.  It

23  also appears that plaintiff may be attempting to claim that Blaikie refused to listen when plaintiff

24  tried to tell her he was suicidal, or that her failure to listen prevented her from recognizing signs

25  of suicide risk in plaintiff.[1]  Because the exact factual basis for plaintiff's deliberate indifference

26  _____

    [1]  Although plaintiff makes no mention of it in his amended complaint, the original complaint
27  makes reference to suicide.  ECF No. 1 at 19.  An amended complaint supersedes the original
    complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  That means that the court cannot
28  consider any allegation in the original complaint that is not contained in the amended complaint.

1    claim against Blaikie is not clear, the claim is dismissed.

2          Thus, plaintiff's amended complaint fails to state an Eighth Amendment claim against

3    Blaikie.

4          V.      Leave to Amend

5          The court will provide plaintiff an opportunity to file a second amended complaint to

6    attempt to cure the deficiencies identified above.  If plaintiff chooses to file a second amended

7    complaint, plaintiff must demonstrate how the conditions complained of have resulted in a

8    deprivation of plaintiff's federal constitutional or statutory rights.  See Ellis v. Cassidy, 625 F.2d

9    227 (9th Cir. 1980).  Also, the second amended complaint must allege in specific terms how each

10   named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is

11   some affirmative link or connection between a defendant's actions and the claimed deprivation.

12   Rizzo, 423 U.S. 362; May, 633 F.2d at 167; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

13   Furthermore, vague and conclusory allegations of official participation in civil rights violations

14   are not sufficient.  Ivey, 673 F.2d at 268.

15         In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

16   make plaintiff's second amended complaint complete.  Local Rule 220 requires that an amended

17   complaint be complete in itself without reference to any prior pleading.  This is because, as a

18   general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375

19   F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files a second amended complaint, the original

20   pleading no longer serves any function in the case.  Therefore, in a second amended complaint, as

21   in an original complaint, each claim and the involvement of each defendant must be sufficiently

22   alleged.

23         In preparing the second amended complaint, plaintiff should keep in mind that he may

24   pursue multiple claims against a single defendant, but he may not pursue unrelated claims against

25   different defendants.  See Fed. R. Civ. P. 18(a); George v. Smith, 507 F.3d 605, 607 (7th Cir.

26   2007); see also Fed. R. Civ. P. 20(a)(2) (joinder of defendants not permitted unless both

27   commonality and same transaction requirements are satisfied).

28   ////

9

1    VI.    Request for Appointment of Counsel (ECF No. 3)

2        The United States Supreme Court has ruled that district courts lack authority to require

3    counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United States Dist. Court, 490

4    U.S. 296, 298 (1989).  In certain exceptional circumstances, the district court may request the

5    voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d

6    1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  The

7    test for exceptional circumstances requires the court to evaluate the plaintiff's likelihood of

8    success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the

9    complexity of the legal issues involved.  See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th

10   Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).  In the present case, the court

11   does not find the required exceptional circumstances.

12       Plaintiff requests counsel on the grounds that (1) his incarceration limits his ability to

13   litigate because he has limited access to the law library, (2) he has limited legal knowledge, and

14   (3) an attorney would be better able to investigate and to present evidence and cross-examine

15   witnesses at trial.  ECF No. 3.  Plaintiff's limited access to the law library, limited legal

16   knowledge, and limited ability to investigate are not exceptional circumstances because they are

17   common to most prisoners.  At this stage of the case, the court is unable to make a determination

18   regarding plaintiff's likelihood of success on the merits and there is no evidence plaintiff is

19   unable to articulate his claims.  As for the necessity of an attorney to represent him at trial, it is

20   not clear that this case will proceed to trial and any request on that basis is premature.  Moreover,

21   the fact that plaintiff may be diagnosed with or receiving treatment for a mental health condition,

22   without more, does not warrant appointment of counsel.  Any future motion for appointment of

23   counsel based on plaintiff's mental health must include evidence of plaintiff's diagnosis and how

24   it prevents him from representing himself.  Plaintiff is cautioned, however, that a showing of

25   mental impairment does not guarantee appointment of counsel and will not entitle him to

26   appointed counsel in the absence of viable claims for relief.  For these reasons, plaintiff's request

27   for counsel will be denied without prejudice.

28   ////

1    VII.    Motion for Preliminary Injunctive Relief and Temporary Restraining Order

2        Plaintiff has also filed a motion for preliminary injunctive relief and a temporary

3    restraining order against defendants.  ECF No. 4.  In his motion, plaintiff asserts that defendants

4    "continually" denied him, and delayed access to, adequate mental health care; that medical staff

5    intentionally interfered with prescribed treatment; and that "medical staff and prison officials

6    acted with deliberate indifference to a serious mental health need."  Id. at 2-3.  Plaintiff alleges

7    that he has suffered from "long delays in providing care for emergency needs in the face of

8    recognized need for treatment."  Id. at 3.

9        Plaintiff seeks an order compelling defendants and their "successors,  agents, employee]s]

10   and all persons acting in concert" with them to provide plaintiff and other inmates with serious

11   mental health conditions at CSP-Sacramento and CSP-Lancaster access to adequate mental health

12   care treatment.  Id. at 5, 14.  He alleges that he will suffer "irreparable harm" without court

13   intervention.  Id. at 7, 11-12.

14       A temporary restraining order is an extraordinary measure of relief that a federal court

15   may impose without notice to the adverse party if, in an affidavit or verified complaint, the

16   movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the

17   movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  The

18   purpose in issuing a temporary restraining order is to preserve the status quo pending a fuller

19   hearing.  The standard for issuing a temporary restraining order is essentially the same as that for

20   issuing a preliminary injunction.  See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d

21   832, 839 n.7 (9th Cir. 2001) (stating that the analysis for temporary restraining orders and

22   preliminary injunctions is "substantially identical").

23       In order to prevail on a motion for injunctive relief, the moving party must demonstrate

24   that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the

25   absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) that the relief

26   sought is in the public interest.  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

27   The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show

28   a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of

11

1   hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction,

2   so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the

3   injunction is in the public interest."  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127,

4   1135 (9th Cir. 2011).  Under either formulation of the principles, preliminary injunctive relief

5   should be denied if the probability of success on the merits is low.  Johnson v. California State

6   Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995) ("'[E]ven if the balance of hardships tips

7   decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is

8   a fair chance of success on the merits.'" (quoting Martin v. Int'l Olympic Comm., 740 F.2d 670,

9   675 (9th Cir. 1984))).

10          In this case, plaintiff's request for injunctive relief must be denied for the same reasons his

11   amended complaint must be dismissed. In other words, because plaintiff has failed to state a claim

12   against any named defendant, he necessarily has not shown that he is "likely to succeed on the

13   merits" of any claim, that "the balance of equities tips in his favor," or that the issuance of an

14   injunction in his case would serve the public interest.  Winter, 555 U.S. at 20.

15          In addition, the court is unable to grant injunctive relief against unidentified medical staff

16   or prison officials because they are not parties to the instant lawsuit.  A district court has no

17   authority to grant relief in the form of a temporary restraining order or permanent injunction

18   where it has no jurisdiction over the parties.  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584

19   (1999) ("Personal jurisdiction, too, is an essential element of the jurisdiction of a district . . .

20   court, without which the court is powerless to proceed to an adjudication.") (citation and internal

21   quotation omitted); Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K., 757 F.2d 1058,

22   1061 (9th Cir. 1985) (vacating district court's order granting preliminary injunction for lack of

23   personal jurisdiction).  Plaintiff also provides no specific facts to show that any nonparty was

24   acting "in active concert or participation" with defendants.  Fed. R. Civ. P. 65(d)(2); Zenith Radio

25   Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969) ( "[A] nonparty with notice cannot be

26   held in contempt until shown to be in concert or participation.").  Thus, even if plaintiff could

27   satisfy all the Winter factors justifying extraordinary injunctive relief under Rule 65, at this stage

28   of the proceedings, the Court simply lacks jurisdiction over any unidentified medical staff or

1    prison officials plaintiff seeks to enjoin.  Zepeda v. INS, 753 F.2d 719, 727-28 (9th Cir. 1985)

2          Finally, plaintiff's request for an order restraining defendants Beard and Macomber and

3    "each of their officers, agents, employers, and all persons acting in concert or participation with

4    them" from placing plaintiff in administration segregation because of lack of bed space and

5    crowding at CSP-Lancaster (ECF No. 4 at 18) should be denied as moot.  Court records indicate

6    that plaintiff is no longer incarcerated at that institution.  See ECF Nos. 11 & 12.  When an

7    inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his

8    claims for such relief become moot when he is no longer subjected to those conditions.  See

9    Weinstein v. Bradford, 423 U.S. 147, 149 (1975); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th

10    Cir. 1995).

11          For these reasons, plaintiff's motion for injunctive relief must be denied.

12    VIII.    Summary

13          Plaintiff's request to proceed in forma pauperis is granted.

14          The amended complaint is dismissed with leave to amend because the facts plaintiff has

15    alleged are not enough to state a claim for relief.  It looks like plaintiff is suing defendants Beard[2]

16    and Macomber because they were the director and warden.  Plaintiff cannot sue Beard and

17    Macomber just because they were in charge.  If he wants to state a claim against either of these

18    defendants, he must either (1) explain how they were personally involved in his treatment; (2)

19    show that they were aware of their employees violating plaintiff's rights or that plaintiff was in

20    danger and they failed to stop the violations or prevent the danger; or (3) that they created or

21    ignored a policy that led to plaintiff's rights being violated.  If plaintiff wants to state claims

22    against defendant Blaikie, he must explain how her actions caused plaintiff's injury.  If plaintiff

23    wants to bring an indifference to mental health claim, he must explain how Blaikie refused to

24    assist him and how that caused his rights to be violated.  If plaintiff wants to bring an excessive

25    use of force claim, he must explain what happened after the alarm was activated or how Blaikie

26   
27
28

[2]  Defendant Beard is no longer Secretary of the CDCR.  If plaintiff plans to bring any official capacity claims against the Secretary of the CDCR for injunctive relief in his second amended complaint, the current Secretary should be named as a defendant as related to those claims. Defendant Beard should still be named for any claims for monetary damages against him in his individual capacity.

1   otherwise used excessive force against him.

2      If plaintiff chooses to amend his complaint, the second amended complaint must include

3   all the claims plaintiff wants to make, because the court will not look at the claims or information

4   in the original or first amended complaint.  In other words, any claims or information not in the

5   second amended complaint will not be considered.

6      In accordance with the above, IT IS HEREBY ORDERED that:

7      1.  Plaintiff's request to proceed in forma pauperis (ECF No. 2) is GRANTED.

8      2.  Plaintiff shall pay the statutory filing fee of $350.  All payments shall be collected in

9   accordance with the notice to the California Department of Corrections and Rehabilitation filed

10  concurrently herewith.

11     3.  Plaintiff's request for the appointment of counsel (ECF No. 3) is DENIED without

12  prejudice.

13     4.  The amended complaint is DISMISSED with leave to amend within thirty days.  The

14  complaint must bear the docket number assigned to this case and be titled "Second Amended

15  Complaint."  Failure to comply with this order will result in dismissal of this action for failure to

16  prosecute.  If plaintiff files an amended complaint stating a cognizable claim, the court will

17  proceed with service of process by the United States Marshal.

18     5.  The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint

19  form used in this district.

20     Further, IT IS HEREBY RECOMMENDED that plaintiff's request for injunctive relief

21  (ECF No. 4) be DENIED.

22     These findings and recommendations are submitted to the United States District Judge

23  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

24  after being served with these findings and recommendations, plaintiff may file written objections

25  with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings

26  and Recommendations."  Failure to file objections within the specified time may waive the right

27  ////

28  ////

1 | to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998);

2 | <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3 | DATED: December 6, 2016

4 |

5 | ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

6 |

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |