UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLTON V. MOSLEY, | No. 2:16-cv-0486 JAM AC P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| JEFFREY BEARD, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, seeks relief under 42 U.S.C. § 1983. The matter was referred to this court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Defendants have moved for summary judgment. See ECF No. 33. For the reasons stated below, the undersigned will recommend that the motion be granted.

I.     FACTUAL AND PROCEDURAL BACKGROUND

The case proceeds on claims that CSP-SAC mental health clinician Blaikie and correctional officer Jones used excessive force against plaintiff in violation of his Eighth Amendment rights, and that CSP-SAC Warden Macomber failed to train prison staff to handle mentally ill inmates without resorting to force. ECF Nos. 26 (screening order); 24 (second amended complaint). Plaintiff alleges that on April 28, 2015, he was in the prison treatment center when he experienced "a severe trauma episode." Plaintiff lay on the floor "in an attempt to reduce the sensation of claustrophobia." ECF No. 24 at 4. Blaikie then activated an alarm

1

that brought custodial staff to the scene. Plaintiff alleges that Blaikie falsely told the officers that plaintiff had been agitated and called her a "bitch." Plaintiff was handcuffed and ordered to stand up. When he was unable to do so because of the trauma he was experiencing, Blaikie and Jones (and others) roughly hauled plaintiff up off the floor, injuring him. Plaintiff was falsely charged with a rules violation. ECF No. 24.

In the instant motion, defendants contend that plaintiff's claims are administratively unexhausted. ECF No. 33. The motion is fully briefed. ECF Nos. 41 (opposition); 44 (reply).

II. APPLICABLE LAW

A. Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).

B. Legal Standards for Exhaustion

1. Prison Litigation Reform Act

Because plaintiff is a prisoner challenging the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA requires prisoners to exhaust available administrative remedies before bringing an action challenging prison conditions under § 1983. 42 U.S.C. 1997e(a). "The PLRA mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." Albino v. Baca, 747 F.3d 1162,

1171 (9th Cir. 2014) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).  "[F]ailure to exhaust is an affirmative defense under the PLRA." Jones v. Bock, 549 U.S. 199, 216 (2007).  It is the defendant's burden "to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).  The burden then "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies unavailable to him." Id.

"Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) (brackets in original).  In discussing availability in Ross, the Supreme Court identified three circumstances in which administrative remedies were unavailable:  (1) where an administrative remedy "operates as a simple dead end" in which officers are "unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) where an administrative scheme is "incapable of use" because "no ordinary prisoner can discern or navigate it," and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1859-60.  "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust – irrespective of any 'special circumstances.' " Id. at 1856.  "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857.

Satisfaction of the exhaustion requirement is a prerequisite to filing in federal court. Absent pre-suit exhaustion, a complaint must be dismissed without prejudice. McKinney v. Carey, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (per curiam).

> The bottom line is that a prisoner must pursue the prison administrative process as the first and primary forum for redress of grievances. He may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed. It would be inconsistent with the objectives of the statute to let him submit his complaint any earlier than that.

Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006).  Accordingly, the exhaustion

requirement is not satisfied or excused by exhausting available remedies during the course of the litigation. McKinney, 311 F.3d at 1199.

        2. <u>California Regulations Governing Exhaustion of Administrative Remedies</u>

"The California prison system's requirements 'define the boundaries of proper exhaustion.'" Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (quoting Jones, 549 U.S. at 218). In order to exhaust, the prisoner is required to complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. California regulations allow a prisoner to "appeal" any action or inaction by prison staff that has "a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2017).[1] The appeal process is initiated by the inmate's filing a "Form 602" the "Inmate/Parolee Appeal Form," "to describe the specific issue under appeal and the relief requested." Id., § 3084.2(a). "The California prison grievance system has three levels of review: an inmate exhausts administrative remedies by obtaining a decision at each level." Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (2011); Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010)).

III.    UNDISPUTED FACTS

Defendants submitted a statement of undisputed facts with their motion, as required by the rules. ECF No. 33-3. They have also provided evidentiary support for the facts they characterize as undisputed. ECF Nos. 33-4 through 33-12. Plaintiff did not submit a statement of undisputed facts or respond to defendants' statement as required by Local Rule 260(b). See ECF No. 41.[2] Having reviewed the record as a whole, the undersigned finds the following pertinent facts to be undisputed:

- Between April 28, 2015, when the alleged incident occurred, and January 17, 2017, when the instant complaint was filed, plaintiff filed 19 healthcare appeals,

---

[1] All citations to Title 15 of the California Code of Regulations are, unless otherwise noted, for the current version, which has been unchanged, in pertinent part, since January 2011.
[2] Plaintiff was served with the notice required by Rand v. Rowland, 154 F.3d. 952, 962-63 (9th Cir. 1998) (en banc), explaining the requirements for opposing summary judgment. ECF No. 33-1.

4

| | |
|---|---|
| 1 | four of which were exhausted through the third level of review. |
| 2 | • Only one of the referenced health care appeals involved the incident described in |
| 3 | the complaint: Health Care Appeal Log No. SAC-HC-15031189, which was |
| 4 | reclassified as a staff complaint and reassigned Log No. SAC-SC-15001345.[3] |
| 5 | • In Health Care Appeal Log No. SAC-HC-15031189, plaintiff alleged that CSW |
| 6 | Blaikie became "unprofessional. . . agitated, and belligerent" during their |
| 7 | counseling session on April 28, 2015 when he told her about problems he was |
| 8 | having with custody staff. The Form 602 reported that Blaikie said, "To hell with |
| 9 | you, Mr. Mosley, I believe you [are] in the EOP program for legal benefit the[re's] |
| 10 | nothing wrong with you mentally." Plaintiff stated that five to ten minutes later he |
| 11 | was "escorted" out of the treatment center by two named officers, neither of them |
| 12 | Jones, and that Blaikie then activated her alarm and falsely reported that the |
| 13 | officers had initiated the alarm. These allegations were followed by the |
| 14 | unexplained assertion that Blaikie had used excessive force.[4] |
| 15 | • The appeal did not mention Officer Jones. |
| 16 | • The appeal was received on July 3, 2015. On July 30, 2015, plaintiff was |
| 17 | interviewed regarding the appeal. He did not provide any additional details |
| 18 | involving a use of force by CSW Blaikie, and he did not mention Officer Jones. |
| 19 | • On August 18, 2015, the appeal was partially granted at the second level to the |
| 20 | extent that an inquiry was conducted. It was found that staff did not violate policy. |
| 21 | • Plaintiff appealed to the third level of review on September 13, 1015. The appeal |
| 22 | was accepted on September 16, 2015. The third level appeal did not include any |
| 23 | specific allegations of force by Blaikie and did not mention Jones. However, in |
| 24 | explaining his dissatisfaction with the second level decision, plaintiff wrote: |

> Will not subject other persons to any form of discrimination
> because of race, religion, nationality, sex, political belief,
> age, or physical or mental handicap. The deliberate

---
[3] See ECF No. 36-6 at 51-60 (Exhibit D to Declaration of J. Lewis).
[4] ECF No. 36-3 at 57.

5

> indifference to serious mental health care violated Plaintiff Carlton Mosley's rights and constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Also constituted wanton infliction of pain. Cruel and uncalled for. ('State of Mind.') Protection from physical brutality. Excessive use of force M. Blaikie, violates, the Eighth Amendment when she didn't applied [sic] in an effort to maintain or restore discipline, not used to maliciously and sadistically cause harm.[5]

- The third level appeal of Log No. SAC-HC-15031189/ SAC-SC-15001345 was denied on December 8, 2015.

- Plaintiff filed no health care appeals during the relevant period that named Officer Jones or addressed staff training regarding the use of force with mentally ill inmates.

- Between April 28, 2015, and March 2016, plaintiff submitted approximately 25 non-medical appeals. Five were accepted for review, and the others were screened out or forwarded to the correct institution for processing.

- Of the 25 non-medical appeals that plaintiff submitted during the relevant timeframe, only one, Appeal Log No. SAC-15-02299, involved the matters referenced in the SAC.

- Appeal Log No. SAC-15-02299 contested the Rules Violation Report issued to plaintiff regarding the April 28, 2015 incident.[6] The RVR had charged plaintiff with disruptive behavior, and he was found guilty at a hearing on June 2, 2015. The appeal alleged violation of plaintiff's due process rights in the RVR hearing. Plaintiff contended in his appeal that his mental illness and medications were the cause of his disruptive behavior. The appeal stated in relevant part: "I was written up for an alleged 'disruptive behavior.' At the time of this violation inmate Mosley medications cause me to experience certain symptoms that affected [my] response to custody command and orders." Plaintiff also wrote the phrase

---
[5] ECF No. 36-6 at 58.
[6] ECF No. 36-4 at 39-53 (Exhibit D to Declaration of C. Lacy).

6

"excessive use of force" on the appeal form, but provided no facts related to any use of force.[7]

- This appeal was denied at the Second Level of review on September 21, 2015, based on a finding that plaintiff was afforded all applicable due process rights at the RVR hearing.

IV. DISCUSSION

A. Plaintiff's Claim Against Blaikie is Unexhausted

Plaintiff's grievance of Blaikie's conduct, Health Care Appeal Log No. SAC-HC-15031189/ SAC-SC-15001345, was pursued through the third level and so was sufficient to administratively exhaust the claim(s) that it contained. See Reyes, 810 F.3d at 657. The undersigned agrees with defendants, however, that this grievance did not fairly present the excessive force claim that plaintiff has brought to this court.

"A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010). Where a prison system's grievance procedures do not specify the requisite level of detail for inmate appeals, which is the case in California, id., a grievance satisfies the administrative exhaustion requirement if it "alerts the prison to the nature of the wrong for which redress is sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). Health Care Appeal Log No. SAC-HC-15031189/ SAC-SC-15001345 put the prison on notice that appellant sought redress for Blaikie's alleged verbal responses to petitioner on April 28, 2015 (her "unprofessional. . . agitated, and belligerent" demeanor; saying "To hell with you;" and suggesting that plaintiff sought mental health care only for legal advantage), for improperly sounding the alarm that summoned custody staff, and for making false statements about the alarm. Those are the only actions of Blaikie's that the appeal identified as violating plaintiff's rights.

The reference to "excessive force" on the original 602 was entirely unexplained. Absent any factual allegations regarding the use of force, this reference could only have been interpreted

---

[7] ECF No. 33-4 at 43.

as referring (if inaptly) to the actions of Blaikie's that plaintiff did specify – which did *not* include any allegation that Blaikie participated in or otherwise caused plaintiff's forcible removal from the floor, causing him physical harm. Plaintiff's addition of numerous phrases from Eighth Amendment doctrine at the third level of review ("deliberate indifference," "cruel and unusual punishment," "wanton infliction of pain, "maliciously and sadistically cause harm") cannot and does not substitute for factual allegations explaining what conduct is alleged to have violated the Eighth Amendment. Overall, the appeal reads at every level as if plaintiff was claiming that Blaikie's attitude and language, and/or her summoning of correctional officers by activating the alarm, violated the Eighth Amendment.[8] The appeal did not provide Blaikie with notice that she was being accused of physically pulling plaintiff up off the floor by his shoulders while he was handcuffed, or causing custodial officers to do so, with a degree of force that caused him injury and was intended to inflict pain. That alleged use of force is not mentioned anywhere in the appeal. Accordingly, the only Eighth Amendment claim that the court has identified as potentially cognizable in the SAC is not exhausted as to Blaikie.

The unexplained reference to "excessive use of force" in Appeal Log No. SAC-15-02299, which challenged the RVR proceeding that followed the April 28, 2015 incident, also did not exhaust an Eighth Amendment claim as to Blaikie. First, this grievance also lacked allegations of fact regarding any use of force. Second, this grievance was not pursued past the second level.

In opposition to summary judgment, plaintiff effectively concedes that his grievances did not exhaust his excessive force claim against Blaikie:

> [I] request that [my] error be excused and that [I] be permitted to re-file [my] grievance and start over due to on April 28, 2015 while incarcerated at SAC, [I] experienced a severe traumatic episode that resulted [me] lying on the floor of claustrophobia feeling at that time, in B-Facility treatment center, and for these reason caused [me] to make the mistake.

---

[8] Plaintiff appears to endorse this interpretation by arguing in opposition to summary judgment that his second level appeal made it clear that Blaikie had used excessive force when, to cause harm, she "maliciously and sadistically" pressed her alarm and made a false statement. See ECF No. 41 at 6. The Eighth Amendment claim that had been found cognizable involves the use of physical force. Unreasonable activation of an alarm, and the making of false statements, does not implicate the Eighth Amendment.

8

ECF No. 41 at 3. Because exhaustion is a prerequisite to filing in federal court, plaintiff may not "start over" with a new grievance during the pendency of the case. See McKinney, 311 F.3d at 1200-01.

Plaintiff also suggests, with citation to Woodford v. Ngo, supra, that administrative remedies were not available to him and that exhaustion must be excused on that basis. This argument is untenable in light of the fact that plaintiff did exhaust a grievance of the April 2015 incident through the third level. His failure to articulate an excessive force claim cannot be attributed to the prison's procedures. Because plaintiff has not made a showing of unavailability within the meaning of Ross, supra, 136 S. Ct. at 1859-60, exhaustion cannot be excused. The court has no authority to excuse exhaustion on grounds of special circumstances including plaintiff's mental health issues.

### B. Plaintiff's Claim Against Jones is Unexhausted

The only relevant grievance that plaintiff pursued through the third level of review, Health Care Appeal Log No. SAC-HC-15031189/ SAC-SC-15001345, neither named Officer Jones nor identified any use of force. As discussed more fully above, that grievance alleged that CSW Blaikie had become agitated and belligerent during a counseling session, made unprofessional statements to plaintiff, wrongfully activated an alarm, and made false statements about the incident. The grievance stated that plaintiff was then "escorted" from the treatment center by Officers Klausing and Camacho. It did not say that anyone manhandled plaintiff prior or in relation to that escort. Accordingly, plaintiff did not exhaust the claim that Officer Jones or any prison staff used excessive force by pulling plaintiff up off the floor by his shoulders while he was handcuffed.

Plaintiff concedes that he did not identify Jones or any act of physical force in his 602, but contends that the exhaustion rules were unclear and therefore cannot be applied to bar his claim. ECF No. 41 at 7, 9-10. The court rejects this argument. The grievance that was filed simply did not provide notice of a claim that Jones (or anyone else) used excessive physical force to get plaintiff up off the floor and out of the treatment center. See Sapp, 623 F.3d at 824. The grievance did identify other actions of prison staff with specificity, and petitioner was able to

pursue it through the third level. Plaintiff's documented utilization of the inmate grievance process demonstrates that remedies were not unavailable to him within the meaning of Ross, 136 S. Ct. at 1859-60, which provides the only exception to the exhaustion requirement. Accordingly, exhaustion cannot be excused.

### C.  Plaintiff's Claim Against Warden Macomber is Unexhausted

Plaintiff has identified no grievance that put the prison on notice he was challenging the adequacy of training for custodial staff regarding the use of force with mentally ill inmates. Moreover, because plaintiff failed to exhaust any claim that Blaikie, Jones, or other staff used excessive force in removing him from the treatment center in April 2015, the warden cannot have been on notice that plaintiff was raising such a claim.

The court has reviewed the history of plaintiff's appeals and the underlying documentary record, and finds no evidence that supports either exhaustion or the unavailability of remedies.

### CONCLUSION

For the reasons stated above, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment, filed October 5, 2017 (ECF No. 33), be GRANTED.  Pursuant to McKinney v. Carey, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (per curiam), this action should be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DAT4ED: October 9, 2019

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE